COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1526-CR**

Cir. Ct. No. **2019CF45**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

KIMEO D. CONLEY,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Kimeo D. Conley, *pro se*, appeals his judgment of conviction for one count of trafficking of a child. He argues that because the State

and trial court committed errors during the pretrial, trial, and postconviction proceedings, we should vacate his conviction and grant him a new trial. For the reasons we explain below, we reject Conley's arguments and accordingly, we affirm the judgment.

## BACKGROUND

¶2 The State charged Conley with one count of trafficking of a child for knowingly recruiting, harboring, and providing a child for the purpose of a commercial sex act contrary to WIS. STAT. § 948.051(1) (2019-20).[1] The criminal complaint alleged that a Milwaukee Police Department Sensitive Crimes Unit officer met with SAB, who explained that between October 30, 2018, and December 4, 2018, Conley sold her for money to multiple men for sex acts. SAB was seventeen years old throughout this time and she told the police that "all of the money she made went to" Conley. SAB told police that Conley had another person "take photos of SAB in red lingerie and posted it on escort websites." SAB explained that in the beginning, she got $80 for some "dates" but she started charging $200-$300 when Conley told her she could charge more.[2] SAB stated that Conley "required" her to notify him "when she had a date." SAB said she "would regularly do [three] dates per day."

¶3 At Conley's initial appearance on January 4, 2019, on the child trafficking case, the trial court was informed that Conley had a pending case for

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] At trial, an officer from Milwaukee Police Department explained that a "date" is "a prostitution-related engagement in which [the victim] would have been meeting with a John and receiving money for a sex act."

"human trafficking, strangulation and suffocation, false imprisonment and misdemeanor battery" related to another victim, MJH. At a hearing on January 25, 2019, for both cases, the prosecutor stated that it had filed a motion to join the two cases.[3] The trial court noted that Conley had a speedy jury trial set for the MJH's case. The trial court set the jury trial in SAB's case to the "same trial date in the event that the joinder motion is granted."

¶4 At the joinder hearing on February 11, 2019, trial counsel acknowledged the State had a strong joinder motion, but reminded the court that "[w]hen that trial date was set, the defendant had filed a speedy trial demand." The State had recently filed new discovery in the new case. Conley wanted trial counsel "to do some additional investigation" in the new case, and trial counsel was "not in a position to be ready to go to trial" at the assigned trial date. Trial counsel asked the court to adjourn the trial date; he did not think Conley would "waive the speedy trial demand," but there was some time left to work within the deadline. The trial court noted that the defense did not object to the motion for joinder and granted the motion. The trial court then questioned Conley about whether he would like additional discovery and to waive his speedy trial demand or if he wanted to proceed with the original trial date in approximately two weeks. Conley chose to keep his speedy trial demand.

¶5 A three-day jury trial was conducted in February 2019. After the closing statements and jury instructions, the trial court selected two jurors by lot and removed them before deliberations, creating the final jury panel of twelve.

---

[3] At this hearing, a substitute Assistant District Attorney (ADA) appeared in place of the ADA who prosecuted the case at trial.

The jury then began deliberations. Prior to sending the jury panel home at the end of the day, the trial court stated on the record that "[o]ne of the alternate jurors has stayed in the event you would have had a verdict today. She can't talk to any of you because we've talked to her a little bit about the case and some of the things behind the scenes." The jury deliberated the next morning and returned a verdict of guilty on the charge of trafficking of a child and not guilty on the charges of human trafficking, strangulation and suffocation, false imprisonment, and battery.

¶6    At the sentencing hearing, the trial court heard from SAB, who discussed the impact Conley's crimes had on her, stating that she thought Conley deserved "as much [time] as you could possibly give him" and that she had "a lot of anxiety" when meeting new people as a result. The trial court also heard from Conley,[4] as well as the State and trial counsel. When the trial court discussed the sentence it was imposing, it stated:

> I will tell you that I watched the jury's reaction as they were watching the evidence come in. And I talked with that jury panel. They were horrified with this conduct.
>
> I did not find you believable when you took the stand. And today I don't find that you've taken any responsibility for the actions that you were engaged in or that it's even sunk into your head just how serious this was.
>
> ….
>
> You tear the community apart at the roots when you engage in conduct like this.
>
> I can't underscore how serious it is. I can't underscore enough how unfortunate it is that you won't take any responsibility for this, even when a jury found you

---

[4] At Conley's sentencing hearing he raised several issues that he does not renew here regarding relevant evidence and his counsel's responsiveness to his requested questions and witnesses. Because he does not renew them, we do not address these issues.

> guilty and that you appear to have no sympathy or compassion for the victim in this case, none. You care about one person. You proved that based on the activities that you were engaged in; and you proved it again today with the statement that you made.
>
> You care about one person. You care about yourself.

The trial court imposed fifteen years of initial confinement and ten years of extended supervision.

¶7 Prior to the restitution hearing, Conley filed notice of intent to pursue postconviction relief with appointed appellate counsel.

¶8 The final hearing before the trial court was a restitution hearing in May 2019. SAB, appearing with counsel, requested the trial court grant restitution for the income Conley earned for exploiting her under WIS. STAT. § 973.20(4o)(b). SAB testified that she started working for Conley at the "end of October" in 2018 and stopped when he was arrested in December 2018. She worked every day during that time, usually going on three dates each day, and earning $80 for the first few dates and then $200-$300 for each date. SAB did not recall any days she went on fewer than three dates and she testified that she gave all of her earnings to Conley. Trial counsel cross-examined SAB to understand how much Conley spent on food and rent and clothing or personal items during this time period; however, the trial court informed him that it was not going to offset anything spent on SAB. SAB requested restitution of $20,400, based on thirty-four days at three dates a day, which equaled 102 dates, and then multiplied by $200 per date for an estimate of her gross earnings. The trial court interpreted the statute to include "gross income gained by the defendant" and that the trial court did not see anything in the statute "for offsetting a trafficker with the little tidbits or crumbs he may have given her along the way to keep her housed so he could keep her in his stable."

The trial court found SAB's testimony credible and it concluded this was a reasonable calculation and ordered $20,400 in restitution to SAB.

¶9     In June through August 2019, Conley pursued postconviction relief, both with appointed counsel and *pro se*.  Conley filed a *pro se* motion for reconsideration or a new trial.  He argued he had newly discovered evidence, but he did not present that evidence to the court.  The circuit court informed Conley that it would not address Conley's *pro se* motion because his appointed postconviction attorney's motion to withdraw as counsel had not been heard yet. The State Public Defender filed a report pursuant to WIS. STAT. § 809.30(4)(b), which advised the court and Conley that "if the motion to withdraw is granted, the SPD will not again appoint counsel for Mr. Conley in the future in this case either in postconviction proceedings or on appeal."  The trial court held the motion to withdraw in abeyance, pending a response from Conley.  Conley notified the trial court that he understood the risks, was competent to proceed, and he had conflicting goals with the appointed counsel about how to proceed on the case. The trial court granted appointed counsel's motion to withdraw.  This *pro se* appeal followed.  Additional facts are included in the discussion as necessary.

## DISCUSSION

¶10    Conley argues several errors in the court proceedings and trial would make him eligible for postconviction relief; he requests having his conviction vacated or being granted a new trial.  We address his motions in three sets: pretrial issues, postconviction relief issues, and sufficiency of the evidence.  Upon review, we reject Conley's arguments on both procedural grounds and on the merits, and we affirm his conviction.

## I. *Pretrial issues*

¶11    Conley argues that the State's pretrial actions give us reason to dismiss this matter, which is relief that is not available to him. We interpret his appeal overall to request a new trial. We review his arguments briefly: (1) the trial prosecutor did not appear at the January 25, 2019 pretrial hearing, which Conley argues is a violation of the trial court's calendar practice under WIS. STAT. § 802.10(7); (2) the State failed to prosecute SAB for violations of the prostitution statute, WIS. STAT. § 944.30, which he argues violated WIS. STAT. § 805.03, the statute that addresses the failure to prosecute a civil action; (3) the State failed to divulge discovery to the defense in a timely manner; (4) the trial court improperly joined his two cases; and (5) he was arrested without probable cause and he was not read his ***Miranda***[5] rights.

¶12    First, Conley's assertion that having a substitute prosecutor at the January 25, 2019 pretrial hearing violated the court's calendar practice rules under WIS. STAT. § 802.10(7) fails because our supreme court has addressed the situation where "various proceedings in the case were conducted by different assistant district attorneys" and found no violation of due process or prejudicial error. ***Bastian v. State***, 54 Wis. 2d 240, 249, 194 N.W.2d 687 (1972). We note that Conley did not move the trial court at any point to sanction the State for violations of calendar practice rules, which forfeits this issue on appeal. ***State v. Ndina***, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612.

---

[5] ***Miranda v. Arizona***, 384 U.S. 486 (1966).

¶13    Second, Conley asserts that the State's failure to prosecute SAB for violations of the prostitution statute, WIS. STAT. § 944.30, violated WIS. STAT. § 805.03.  This argument fails because the failure to prosecute statute is not an avenue to challenge the State's decision to prosecute other cases; any charges SAB may have faced are not relevant to Conley's prosecution.  *Cf. Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898.

¶14    Third, Conley argues that the State failed to divulge discovery to the defense.  Conley argues that the defense was not given enough time because some discovery was received only fourteen days prior to his final pretrial on February 11, 2019.  He argues now that this was not enough time, but during the February 11, 2019 hearing, the court addressed this issue and whether he might want to waive his speedy trial request.  Conley requested to proceed to trial under the speedy trial demand.  We conclude he is estopped from now complaining that his defense was not given enough time for discovery when he rejected this position earlier.  *See State v. Johnson*, 2001 WI App 105, ¶¶9-10, 244 Wis. 2d 164, 628 N.W.2d 431.

¶15    Fourth, Conley argues his cases were improperly joined by the haste at which the trial court acted.  Two crimes may be joined for trial when the crimes "are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan."  WIS. STAT. § 971.12(1).  "The initial decision on joinder is a question of law that we review *de novo*."  *State v. Salinas*, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609.  Here, both cases are based on similar charges for trafficking and connected acts involving SAB and MJH.  Because we

conclude these charges could have been charged in a single complaint, joinder was not improper.[6] *See* § 971.12(1).

¶16    Fifth, Conley argues that he was arrested without probable cause and he was not read his ***Miranda*** rights.  He argues that his December 2018 arrest was based on MJH's complaint, but MJH was not a credible witness so the complaint was invalid.  However, Conley failed to move to suppress his statements to the police prior to trial.  *See* WIS. STAT. § 971.31(2).  By statute, "defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence" are required to be raised by motion before trial or these arguments are "deemed waived." ***Id.***  Conley did not move the trial court to suppress his statements or otherwise object.  Therefore, his claim is waived, and thus fails.  Furthermore, "a conviction resulting from a fair and errorless trial in effect cures any error" in the preliminary hearing.  ***State v. Webb***, 160 Wis. 2d 622, 628, 467 N.W.2d 108 (1991).  Conley was convicted by the jury.  As we discuss below, we reject Conley's claim that the State's evidence was insufficient to support his conviction.  We conclude that Conley was convicted in a fair and error-free trial.  Therefore, his arguments about probable cause are also forfeited.  ***Ndina***, 315 Wis. 2d 653, ¶¶29-30.  In summary, all of his pretrial claims fail procedurally or on the merits.

---

[6] Moreover, Conley's requested relief for improper joinder is that the two cases would be severed in any new trial.  Although a new trial on the charges involving SAB are potential relief, Conley's acquittal of the charges involving MJH means that any additional prosecution of those charges would violate constitutional protections against double jeopardy.  *See* U.S. CONST. art. V; WIS. CONST. art. I, § 8(1); ***State v. Comstock***, 168 Wis. 2d 915, 936-37, 485 N.W.2d 354 (1992).

## II.    *Postconviction Relief Issues*

¶17    Conley argues that additional errors entitle him to postconviction relief.  He argues that he was convicted under the wrong statute because he asserts that a seventeen-year-old victim does not fall under the child trafficking laws.  He also contends that the trial court improperly applied the restitution statute and tainted the jury panel by speaking to an alternate juror who was then in contact with the jury panel.  He asserts that he has newly discovered evidence in the form of photographs that show that SAB accused another man of trafficking her after she testified at Conley's trial that she was no longer engaged in prostitution and that SAB did not give all of her earnings from sex acts to him.

¶18    Conley has failed to follow statutory procedure to request postconviction relief.  "An appellant is not required to file a postconviction motion in the trial court prior to an appeal if the grounds are sufficiency of the evidence or issues previously raised."  WIS. STAT. § 974.02(2).[7]   Conley has not filed a postconviction motion to the trial court on any issue; therefore, none of these issues can be considered "previously raised."  Conley did file a *pro se* motion for reconsideration; however, the trial court did not address it because he was still represented by counsel.  He then filed his direct appeal to this court without first having the trial court address his concerns.

¶19    "Generally, issues not raised or considered by the trial court will not be considered for the first time on appeal."  *State v. Holland Plastics Co.*, 111 Wis. 2d 497, 504, 331 N.W.2d 320 (1983).  Conley failed to object to the statute

---

[7]  We address his sufficiency of the evidence claims below as allowed by statute.

under which he was convicted or to the trial court allowing an alternate juror to stay in the courtroom while the jury panel deliberated. Conley's counsel did not object to the application of the restitution statute, although we do note that counsel questioned the calculation. Conley's failure to object forfeits these issues. *See State v. Coffee*, 2020 WI 1, ¶19, 389 Wis. 2d 627, 937 N.W.2d 579.

¶20 Further, even if Conley had not forfeited his objections, his arguments fail on the merits. We review his claims separately below.

### A. Application of the trafficking of a child statute

¶21 First, Conley argues that because his victim was seventeen years old, he was improperly convicted of trafficking of a child, when he should have been charged with human/adult trafficking. *See* WIS. STAT. §§ 948.051, 940.302. Conley argues that because a seventeen-year-old falls under adult jurisdiction for the prosecution of certain crimes including prostitution, SAB should be considered an adult as a victim for this crime. This argument fails. Our supreme court expressly addressed a similar issue in *State v. Patterson*, 2010 WI 130, ¶¶45-51, 329 Wis. 2d 599, 790 N.W.2d 909.

¶22 Conley's argument requires us to interpret WIS. STAT. § 948.015, specifically the definition of "child," for the purpose of that statute. Because statutory interpretation is a question of law, our review is *de novo*. *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶26, 299 Wis. 2d 561, 729 N.W.2d 396. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. We first consider the plain and ordinary meaning of the language of the statute.

*Id.*, ¶45.  Then we consider context, structure, and any surrounding statutes if the meaning is not clear in plain language.  *Id.*, ¶46.

¶23    WISCONSIN STAT. ch. 948 addresses crimes against children.  The definition provisions state that a "'[c]hild' means a person who has not attained the age of 18 years, except that for purposes of prosecuting a person who is alleged to have violated a state or federal criminal law, 'child' does not include a person who has attained the age of 17 years."  Sec. 948.01(1).  Based on the plain language of the definition of "child," it excludes children over the age of seventeen from its definition only for the purposes of prosecuting such a person. *See id.*   Here, SAB is not being prosecuted.  She is the victim of this crime. Therefore, we conclude that Conley's conviction for trafficking a child was not in error because SAB was seventeen years old at the time she was victimized.  *See Patterson*, 329 Wis. 2d 599, ¶¶46-47, 51.

### B.    Application of the restitution statute

¶24    Second, Conley argues that the trial court incorrectly applied the restitution statute.  First, he contends that the trial court failed to consider his indigence or his ability to pay.  Second, he argues that the trial court exceeded the statutory cap by setting restitution at $20,400.  We agree with the State that there was no error.

¶25    Under Wisconsin law, "restitution is the rule and not the exception." *State v. Madlock*, 230 Wis. 2d 324, 333, 602 N.W.2d 104 (Ct. App. 1999).  "[T]he primary purpose of restitution is not to punish the defendant, but to compensate the victim."  *State v. Canady*, 2000 WI App 87, ¶8, 234 Wis. 2d 261, 610 N.W.2d 147.  When the trial court imposes a sentence on a convicted offender, the trial court must "order the defendant to make full or partial restitution under this

section to any victim of a crime considered at sentencing … unless the court finds substantial reason not to do so and states the reason on the record." WIS. STAT. § 973.20(1r).

¶26 At Conley's restitution hearing, SAB, by counsel, requested restitution for the "gross income" she earned that she calculated Conley took from her, pursuant to WIS. STAT. § 973.20(4o). Under that statutory provision, a defendant convicted of violating human or child trafficking under WIS. STAT. § 940.302(2) or WIS. STAT. § 948.051 faces specific restitution calculations:

> the restitution order may require that the defendant pay an amount equal to any of the following:
>
> **(a)** The costs of necessary transportation, housing, and child care for the victim.
>
> **(b)** The greater of the following:
>
> **1.** The gross income gained by the defendant due to the services of the victim.
>
> **2.** The value of the victim's services as provided under the state minimum wage.

Sec. 973.20(4o). At the restitution hearing, SAB proposed that $20,400 was a fair approximation of the gross income that SAB's services gained Conley. Based on the trial court finding SAB credible, the trial court accepted this approximation.

¶27 Trial counsel did not object to the application of this statute, but did question the calculations and attempted to determine what Conley might have spent on SAB during the same period. The trial court stated, however, that it did not interpret the calculation to call for an offset because the restitution was based on "gross income" gained by the defendant. We note that Conley does not renew trial counsel's questioning that an offset was applicable.

13

¶28    Instead, Conley first argues that the trial court failed to take into account that he was indigent.  This misrepresents his burden.  "The burden of demonstrating, by the preponderance of the evidence, the financial resources of the defendant, the present and future earning ability of the defendant … is on the defendant."  WIS. STAT. § 973.20(14)(b).[8]  Conley made no objection or argument about his ability to pay during the restitution hearing.  Therefore, he has failed to satisfy his evidentiary burden and this argument fails.

¶29    Second, Conley argues that the trial court's restitution order exceeded the statutory limit of $10,000.  This also misinterprets the trial court order and the restitution statutes.  It is true that under WIS. STAT. § 973.20(4m), if a defendant is convicted of violating WIS. STAT. § 948.051 and the court "finds that the crime was sexually motivated," then "the restitution order may require that the defendant pay an amount, not to exceed $10,000, equal to the cost of necessary professional services relating to psychiatric and psychological care and treatment."  This limit is entirely inapplicable here because SAB does not request restitution for medical or professional services.  Therefore, both of his arguments with regard to restitution fail.

### C.    Tainted jury

¶30    Conley argues that the trial court tainted the jury panel by speaking with an alternate juror who then relayed information to the jury panel.  Beyond the fact that Conley needed to bring this allegation to the trial court before pursuing an appeal, he had not stated what extraneous information reached the jury panel.

---

[8] As the State noted, the amendment to this statute after Conley's sentencing is not relevant to this appeal. *See* 2019 Wis. Act 71.

Further, his claim fails because he has not provided admissible evidence of this issue in accordance with WIS. STAT. § 906.06(2). A juror may not testify about the deliberations of a trial, but "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Sec. 906.06(2).

> Initially, the party seeking to impeach the verdict must demonstrate that a juror's testimony is admissible under sec. 906.06(2) by establishing (1) that the juror's testimony concerns extraneous information (rather than the deliberative process of the jurors), (2) that the extraneous information was improperly brought to the jury's attention, and (3) that the extraneous information was potentially prejudicial. After the [trial] court determines whether the party has satisfied sec. 906.06(2), it determines whether one or more jurors engaged in the alleged conduct and whether the error was prejudicial.

*State v. Eison*, 194 Wis. 2d 160, 172-73, 533 N.W.2d 738 (1995). The trial court's record of its contact with the alternate juror does not satisfy any part of a claim to show that extraneous information reached the jury. Conley has not met his burden and this claim fails on the merits as well as procedurally.

### D. Impartial decision maker

¶31 Conley argues that he was denied access to an impartial decision maker because the trial court stated that it did not find Conley "believable." "There is a presumption that a judge has acted fairly, impartially, and without prejudice." *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772. The party asserting judicial bias has the burden to rebut the presumption by a preponderance of evidence. *Id.* The test for bias is both subjective and objective. *State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. "Judges must disqualify themselves based on subjective bias whenever they have

15

any personal doubts as to whether they can avoid partiality to one side." ***Id.*** The objective test for judicial bias is "whether a reasonable person could conclude that the trial judge failed to give the defendant a fair trial." ***Herrmann***, 364 Wis. 2d 336, ¶27.

¶32 Conley argues that the trial court failed the objective test by appearing to be biased, relying on ***Gudgeon***, 295 Wis. 2d 189, ¶30 ("The risk of bias that the ordinary reasonable person would discern—which is the test—is simply too great to comport with constitutional due process."). His evidence is that the trial court demonstrated bias by stating at sentencing that she did not find him "believable." He argues that means the trial court did not believe any of his trial testimony, which he concludes is unfair. Conley does not rebut the presumption that the trial court was an impartial decision maker. His arguments are not evidence of bias because the trial court made these statements at sentencing—after the jury's credibility determinations were completed and after it had convicted Conley. The trial court's statement did not show bias by agreeing with the jury's credibility determination and verdict. Accordingly, Conley's claim that he was denied an impartial decision maker fails on the merits.

### E.     Newly discovered evidence

¶33 Conley argues that newly discovered evidence compels a new trial. Conley's newly discovered evidence consists of photographs that he alleges show that SAB accused another man of trafficking her shortly after she testified at Conley's trial that she was not engaged in prostitution any longer, which he argues shows SAB committed perjury on the stand. He also argues that the photos disprove that SAB gave all of her earnings to Conley.

¶34 "In order to set aside a judgment of conviction based on newly[]discovered evidence, the newly[]discovered evidence must be sufficient to establish that a defendant's conviction was a 'manifest injustice.'" *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted). A postconviction motion based on newly discovered evidence must establish by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *State v. Love*, 2005 WI 116, ¶43, 284 Wis. 2d 111, 700 N.W.2d 62 (citations omitted). If these factors are proven, the trial court must then determine "whether a reasonable probability exists that a different result would be reached in a trial." *Id.*, ¶44 (citation omitted). "A reasonable probability of a different outcome exists if there is a reasonable probability that a jury, looking at both the old evidence and the new evidence, would have a reasonable doubt as to the defendant's guilt." *State v. Vollbrecht*, 2012 WI App 90, ¶18, 344 Wis. 2d 69, 820 N.W.2d 443. We review the trial court's decision to grant or deny a motion for a new trial based on newly discovered evidence under the erroneous exercise of discretion standard. *See Plude*, 310 Wis. 2d 28, ¶31.

¶35 Conley's argument again fails procedurally and on the merits. The State argues that the photographs are not in the record and even based on Conley's arguments, this information would be cumulative to the defense strategy at trial to undermine SAB's credibility. Because the photographs are properly excluded from the record, we cannot review this evidence, and we cannot conclude that it satisfies the standard for newly discovered evidence.

¶36 Procedurally, Conley had to present his newly discovered evidence to the trial court prior to making this appeal. Conley has the burden of

17

establishing that this issue was raised before the trial court; we "will generally not review an issue which is raised for the first time on appeal." *Young v. Young*, 124 Wis. 2d 306, 316, 369 N.W.2d 178 (Ct. App. 1985). It appears in the record that Conley attempted to submit photographs with this appeal, but new evidence may not be added to the record on appeal. Reference to evidence outside of the record violates appellate procedure. See WIS. STAT. RULE 809.19(1)(d). Our review is limited to the record before us. *See Duhame v. Duhame*, 154 Wis. 2d 258, 269, 453 N.W.2d 149 (Ct. App. 1989). Therefore, Conley has not satisfied the newly discovered evidence standard and he is not entitled to a new trial or evidentiary hearing. In sum, Conley's claims for postconviction relief have all failed procedurally and on the merits.

## III.    *Sufficiency of the evidence*

¶37    Conley's final issue is that he argues that there was insufficient evidence to support his conviction. In reviewing the sufficiency of the evidence to support a conviction, we may not substitute our judgment for that of the trier of fact unless the evidence, viewed most favorably to the verdict, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found the requisite guilt. *See State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990); *see also State v. Alles*, 106 Wis. 2d 368, 376-77, 316 N.W.2d 378 (1982). If more than one reasonable inference can be drawn from the evidence, we must adopt the inference that supports the verdict. *See Poellinger*, 153 Wis. 2d at 506-07.

¶38    To secure a conviction as to count one, trafficking of a child, the State had to prove beyond a reasonable doubt the three elements of the crime of trafficking of a child contrary to WIS. STAT. § 948.051(1):  (1) the defendant

knowingly recruited, harbored, or provided the victim; (2) the victim had not attained eighteen years of age; and (3) the defendant recruited, provided, or harbored the victim for the purpose of commercial sex acts. *See* WIS JI—CRIMINAL 2124.

¶39 This was the evidence presented at trial to support this charge. For the first element, SAB testified that Conley recruited her for his "money train" of commercial sex acts and he provided an apartment for her to stay with a man named JR. SAB testified that Conley paid JR "$20 every pop I made in order for me to keep the house." MJH testified that Conley was paying for SAB to reside at an apartment during the time she was performing commercial sex acts.

¶40 For the second element, SAB testified that she told Conley "multiple times" that she was seventeen years old and she even showed him her "school ID" and her birth certificate.

¶41 For the third element, SAB testified that when a patron contacted SAB to arrange a commercial sex act, she would let Conley know about the request and the price before she would accept the date. SAB testified that she would text Conley after a date with a patron and arrange for him to pick up the money. She explained that sometimes Conley would take her to the date and she would give him the money when she got back in the car. MJH also testified that SAB worked as a prostitute for Conley after advertising for SAB's services was placed on multiple websites.

¶42 We conclude that the jury could reasonably infer that Conley recruited, harbored, and provided for SAB using the plain meanings of those terms, and that Conley harbored SAB for the purpose of commercial sex acts and the purpose of receiving the money SAB was earning from those acts. The jury is

the sole arbiter of witness credibility, and it alone is charged with the duty of weighing the evidence. *See Poellinger*, 153 Wis. 2d at 506. Based on the verdict, the jury considered SAB's and MJH's testimony to be credible and, ultimately, based on the evidence, the jury reasonably inferred that the State proved beyond a reasonable doubt the three elements of trafficking of a child. Accordingly, Conley has failed to show that his conviction was not supported by sufficient evidence.

¶43    Conley's arguments that there was insufficient evidence to support his conviction are not developed "reflecting any legal reasoning. Instead, the arguments are supported by only general statements. We may decline to review issues inadequately briefed." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). In his reply, Conley introduces several new arguments including that the State had to prove eight elements to secure a conviction for trafficking a child. We have consistently held that arguments raised for the first time in a reply brief will not be considered. Conley "unfairly raises this argument for the first time in his reply brief, thereby denying the State an opportunity to respond, and denying this court a full analysis of the issue by both parties with relevant case and record citations. As such, we will not address the issue." *State v. Lock*, 2013 WI App 80, ¶38 n.6, 348 Wis. 2d 334, 833 N.W.2d 189. We conclude that there was sufficient evidence for the jury to have convicted Conley.

## CONCLUSION

¶44    Conley's request for postconviction relief fails both procedurally and on the merits.  Accordingly, we affirm Conley's judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.