STATE of Wisconsin, Plaintiff-Respondent,

v.

Stephen DYE, Defendant-Appellant.†

Court of Appeals

*No. 96–3572–CR. Submitted on briefs October 24, 1997.—Decided November 26, 1997.*

(Also reported in 572 N.W.2d 524.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J.    Stephen Dye appeals from a judgment of conviction and an order denying postconviction relief.[1] He now raises claims that: (1) he was subjected to double jeopardy when a conviction for possession with intent to deliver cocaine followed the imposition of a controlled substances tax assessment by the Department of Revenue (DOR); (2) the evidence presented at trial was insufficient to support the State's charge that he was in possession of more than five grams of cocaine; (3) the conviction used to support the habitual criminality enhancements was obtained in violation of his state and federal constitutional rights; and (4) he should be granted a new trial in the interests of justice.

We conclude that Dye's double jeopardy claim is resolved by the fact that the DOR subsequently canceled the drug tax assessment. As to the insufficiency of the evidence to prove that he was in possession of more than five grams of cocaine, we note that all of the test samples were subjected to presumptive testing for cocaine, in addition to random confirmatory tests, and conclude that when coupled with the circumstantial evidence presented by one of the investigating officers, there was sufficient evidence to support the conviction. We further conclude that Dye's attack on the habitual criminality enhancement has been waived due to his

---

[1] Dye was convicted of four separate counts: (1) possession of a firearm by a convicted felon, *see* § 941.29(1), STATS.; (2) possession of more than five grams of cocaine with intent to deliver, *see* § 161.41(1m)(cm)2, STATS., 1993–94; (3) possession of THC (marijuana), *see* § 161.41(3r), STATS., 1993–94; and (4) possession of drug paraphernalia, *see* § 161.573(1), STATS., 1993–94. Each count carried a habitual criminal enhancer. *See* § 939.62, STATS.

stipulation to the fact of the conviction at trial. Because of our analysis of the first three appellate issues and our conclusion that the controversy at issue was fully tried, there is no reason to grant Dye a new trial. Consequently, we affirm.

The charges in this case arose out of the execution of search warrants authorizing police to search Dye's automobile and apartment. A handgun was seized from his vehicle,[2] and a number of items suspected of being controlled substances were taken from his apartment. The items seized from his apartment included: a blue plastic film cannister containing two knotted baggies of suspected cocaine base; a yellow gem bag containing a single suspected "rock" of cocaine base; a loose rock of suspected cocaine base; seven smaller, knotted baggies of suspected cocaine base; three other baggies of suspected cocaine base closed with twist ties; and a paper bindle containing what appeared to be cocaine powder. A total of fifteen samples of suspected cocaine were seized. The search also revealed, inter alia, a small quantity of suspected marijuana, a postal gram scale, an electronic gram scale, a pager, small pieces of unfolded paper commonly used to make bindles to package small quantities of cocaine and a bottle of mannitol (a substance used to "cut" cocaine).

The fifteen samples of suspected cocaine were submitted for testing. The chemist who conducted the tests testified that the total weight of the samples was 7.9234 grams. He stated that he conducted presumptive color tests for cocaine on all fifteen samples; based on the presumptive testing, he concluded that fourteen of the samples were cocaine base and one was cocaine powder. He then conducted confirmatory spectropho-

---

[2] As a convicted felon, Dye was not permitted to own or carry a gun.

tometry tests[3] on the single sample of cocaine powder and on a randomly chosen sample of cocaine base; both tests were positive for cocaine. The chemist testified that based on these results he concluded that all fifteen samples were cocaine.

A four-count criminal complaint was filed. *See supra* note 1. Prior to trial, defense counsel filed a motion seeking to dismiss counts two and four on the grounds that the imposition of additional penalties on these charges would violate Dye's constitutional protections against double jeopardy. Defense counsel argued that the DOR had already imposed a controlled substances tax assessment; therefore, in accord with *Department of Revenue v. Kurth Ranch,* 511 U.S. 767 (1994), "the drug tax assessment imposed by the Wisconsin Department of Revenue . . . constituted punishment under the Double Jeopardy Clause." The trial court rejected defense counsel's analysis on this issue.

Following a jury trial, Dye was found guilty on all counts. He was subsequently sentenced to a total of twenty years imprisonment on all four charges. Dye filed a postconviction motion in which he renewed his double jeopardy claim, challenged the sufficiency of the evidence to establish his possession of more than five grams of cocaine and argued that the repeater enhancement was invalid because it was based on a prior conviction that was obtained in violation of his Fifth Amendment constitutional rights (protection against double jeopardy). He later filed an amended motion in which he raised a Fourth Amendment collat-

---

[3] This is a test in which the unknown substance is subjected to a light source, absorbs the light emitted from the laser, and emits a pattern. The pattern emitted can then be compared with the pattern produced by samples known to be cocaine.

eral challenge (unreasonable search and seizure) to the prior conviction. Following a hearing, all of his postconviction motions were denied and Dye now appeals.

Dye first argues that his criminal conviction for possession of cocaine with intent to deliver should be reversed because it came after the imposition of a controlled substances tax assessment involving the same drugs. This issue presents a question of law which we review de novo. *See State v. Turner,* 136 Wis. 2d 333, 344, 401 N.W.2d 827, 832 (1987). Because of Dye's claims, we must conduct an independent inquiry into the application of double jeopardy provisions to the facts. This is done to assure that the scope of constitutional protections does not vary from case to case. *See id.*

■

Dye claims that his constitutional protections against double jeopardy have been violated because he is being punished twice for the same conduct. Dye and the State are in agreement that the purpose of the Double Jeopardy Clause is to protect against multiple punishments for the same offense. *See United States v. Halper,* 490 U.S. 435, 440 (1989); *State v. Carpenter,* 197 Wis. 2d 252, 263, 541 N.W.2d 105, 109 (1995), *cert. denied,* 117 S. Ct. 2507 (1997). Dye then contends that pursuant to the Supreme Court's holding in *Kurth Ranch* (taxes imposed upon illegal activities are fundamentally different from pure revenue-raising taxes), his conviction subsequent to an assessment of a drug tax penalty constituted "multiple punishment for the same offense."

■

While the record shows that the DOR issued a notice informing Dye that it intended to proceed under the jeopardy collection procedures outlined in

§ 139.93(2), STATS., in collecting the controlled substances tax assessed against him, it subsequently canceled this assessment. We take judicial notice of the correspondence from the DOR, which is included in documents filed in this case. *See* § 902.01, STATS.; *see also Dunlavy v. Dairyland Mut. Ins. Co.,* 21 Wis. 2d 105, 111, 124 N.W.2d 73, 76 (1963) (court may take judicial notice of records in secretary of state's office). As Dye recognizes in his brief, "[T]he double jeopardy safeguard at issue in this appeal is the protection against successive punishments." The correspondence from the DOR states that the tax assessment Dye characterizes as a penalty has been canceled. The cancellation of the assessment in this case makes the double jeopardy issue moot and we decline to address it further.[4] *See State ex rel. Wis. Envtl. Decade v. Joint Comm.,* 73 Wis. 2d 234, 236, 243 N.W.2d 497, 498 (1976).

Dye next argues that "the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [he] possessed more than five grams of cocaine." While questions regarding the sufficiency of the evidence are normally afforded deference and left to the discretion of the trial court, *see State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–58 (1990), the issue that Dye presents requires that we

---

[4] In his reply brief, Dye argues that "[t]he government's after-the-fact tactical move to cancel the tax assessment cannot nullify the fact that [he] was improperly subjected to successive punishments." He argues that the order issued by the Tax Appeals Commission does not resolve his concerns because it does not address the status of his tax liability. The letter we take judicial notice of states that the assessment is canceled. Should the DOR "change its mind and seek payment," as Dye suggests, this decision will stand as the law of the case.

apply established law to the facts of the case. This presents a question of law which we review de novo. *See Schinker v. McCraw,* 148 Wis. 2d 448, 450, 435 N.W.2d 739, 740 (Ct. App. 1988) (when facts are undisputed and only a question of law is at issue, the court of appeals owes no deference to the trial court).

Dye predicates this argument on his contentions that: (1) although all of the samples were subjected to presumptive testing, confirmatory tests were run on only two of the seized samples; and (2) the supreme court has determined that a nonspecific test is insufficient to support a finding beyond a reasonable doubt that the substance is actually what it is alleged to be, *see State v. Jackson,* 161 Wis. 2d 527, 528–29, 468 N.W.2d 431, 431 (1991). Based on *Jackson,* Dye then reasons that the State failed to prove beyond a reasonable doubt that he possessed more than five grams of cocaine, thus invalidating that portion of his conviction.[5]

Dye misapplies *Jackson.* In that case, the supreme court had accepted review of an unpublished court of appeals decision to consider whether a particular field test for cocaine, the cobalt thiocyanate test, which had been conducted by police "might in itself be sufficient to

---

[5] Dye also offers *State v. Robinson,* 517 N.W.2d 336 (Minn. 1994), as further support for his position. However, the facts of that case are significantly different. Of significance in *Robinson* was the testing chemist's decision to mix the contents of thirteen separately packaged samples of suspected cocaine in a single container, and then test the resulting mixture for the presence of cocaine. *See id.* at 338. Her tests showed that the mixture was 87.6% cocaine base. *See id.* The court ultimately concluded that the sampling conducted was "insufficient to establish the total weight required of the mixture containing a controlled substance." *Id.* at 339.

support a conviction for possession of the drug." *Jackson,* 161 Wis. 2d at 528, 468 N.W.2d at 431. Because the State conceded the nonspecificity of the test and failed to provide the court with any evidence that the cobalt thiocyanate test offered improved reliability and accuracy, the supreme court dismissed the petition for review. It concluded that "[t]he evidence presented by the state may have been sufficient for a finding of probable cause. However, it does little to prove beyond a reasonable doubt an element of a crime which would be necessary for a valid conviction, *i.e.,* that the substance recovered was cocaine." *Id.* at 529, 468 N.W.2d at 431. Dye would have us apply this case and hold that the State failed to prove "beyond a reasonable doubt" that he was in possession of more than five grams of cocaine. We are not persuaded that the holding of *Jackson* is controlling on the facts of this case.

Robert Troy Oliver, a forensic chemist, testified that he first determined the net weight of each of the items submitted for testing. He stated that he received fifteen items of "suspected cocaine."[6] He conducted presumptive tests on each of the samples; in each case, the sample tested positive for cocaine. Oliver next subjected two of the samples to an infrared spectrophotometry test, which confirmed the results of the presumptive color tests. Oliver testified that based on the reliability of the presumptive color test and the results of the confirmatory tests, "[a]ll items contained cocaine."

In response to a question about the reliability of the presumptive color test, Oliver responded that the test is "very specific." He elaborated and testified that this particular presumptive test is "[n]inety-nine per-

---

[6] The "suspected cocaine" terminology is used because all of the samples appeared to be cocaine after a visual inspection.

cent accurate." He further explained that this is because cocaine base is a relatively pure substance, so it yields highly accurate results when subjected to presumptive color testing. Oliver noted that this technique of using a "representative sampling" is widely employed and that he was able to form his opinion as to the validity of his results "to a reasonable degree of scientific certainty."

We conclude that the facts of the instant case are distinguishable from those considered by the *Jackson* court. Our reading of *Jackson* informs us that the State claimed the challenged evidence to be cocaine based only upon a *field* test of a small portion of the seized substance *conducted by police. See id.* at 528, 468 N.W.2d at 431. The *Jackson* court pointed out that, based on the record before it, there was no circumstantial evidence to support a determination as to the nature of the substance. *See id.* at 529, 468 N.W.2d at 431. Here, however, the presumptive color test was conducted in a lab by a trained chemist. He testified that when this presumptive test is used on suspected cocaine, it is "[n]inety-nine percent accurate." Oliver also noted that had he gotten even one sample that did not test positive on the presumptive test, he would have tested every item.

Furthermore, Investigator David Boldus, who was responsible for collecting all of the evidence located during the search, testified. He testified that both the appearance and the packaging of the samples were consistent with the practices of drug dealers when handling cocaine. He also stated that the other evidence recovered (the scales, the pager, small unfolded pieces of paper commonly used to make bindles and a bottle of mannitol) are all commonly used by individuals who are engaged in the sale of drugs.

291

We conclude that unlike the situation in *Jackson,* there was sufficient evidence to support the State's claim that Dye was in possession of more than five grams of cocaine. The combination of the presumptive tests, the follow-up confirmatory tests, and the circumstantial evidence obtained during the search was sufficient to support Dye's conviction.

Dye next appeals the trial court's imposition of a habitual criminal enhancer. He brings this as a collateral challenge to a judgment of conviction entered in 1991 in *State of Wisconsin v. Stephen Dye,* Racine County Case No. 91–CF–592. His core contention is that the 1991 conviction is constitutionally invalid because of an alleged Fourth Amendment violation: that it was the result of an illegal stop. He challenges the validity of that conviction pursuant to *State v. Baker,* 169 Wis. 2d 49, 55, 485 N.W.2d 237, 239 (1992), which provides that "for sentencing purposes . . . a defendant may collaterally attack a prior . . . conviction allegedly obtained in violation of the defendant's constitutional rights."

Although Dye is correct that *Baker* permits such a collateral challenge, the conviction Dye seeks to challenge in the instant case is a felony conviction he stipulated to during this trial. At the time of the stipulation, the trial court conducted an appropriate colloquy to ascertain that Dye understood that his stipulation relieved the State of the burden it would otherwise have to prove the conviction. Dye responded that he did. There is a general rule that sentencing judges may use all of the information they possess in imposing sentences. *See United States v. Klund,* 37 F.3d 1249, 1251 (7th Cir. 1994). Additionally, a judge

must consider a defendant's criminal record at the time of sentencing. *See State v. Paske,* 163 Wis. 2d 52, 62, 471 N.W.2d 55, 59 (1991).

■

We conclude that Dye's stipulation to the earlier conviction properly placed it before the trial court for consideration in sentencing and now prohibits Dye from bringing a collateral attack on the basis for the conviction itself. Stipulations are admissions that dispense with proof. *See Fletcher v. Eagle River Mem'l Hosp., Inc.,* 156 Wis. 2d 165, 177, 456 N.W.2d 788, 794 (1990) (a judicial admission is conclusive on the party making it and forecloses the admitter from contradicting the admission). Dye made a deliberate choice of trial strategy when he stipulated to the earlier conviction; this prevented the State from proving this conviction before the jury at trial. He can no longer challenge the validity of that conviction in this case. *See State v. Damon,* 140 Wis. 2d 297, 305, 409 N.W.2d 444, 448 (Ct. App. 1987) ("A defendant cannot create his own error by deliberate choice of strategy and then expect to receive benefit from that error on appeal."). We decline to address Dye's collateral challenge to the conviction underlying the penalty enhancement.

Dye also requests a new trial in the interests of justice. *See* § 752.35, Stats. He argues on appeal that he was prejudiced by the State's closing argument when the prosecutor invited the jurors "to draw an erroneous inference concerning the significance of the money found in appellant's pocket because evidence that would have refuted this inference was not available to the jurors." As noted by the trial court, the evidence refuting the suggested inference was known

and available to the defendant.[7] He chose not to present it.

A new trial may be granted "when the real controversy has not been fully tried." *Vollmer v. Luety,* 156 Wis. 2d 1, 19, 456 N.W.2d 797, 805 (1990). The real controversy presented by this case is whether Dye possessed cocaine with the intent to deliver. The physical evidence presented at trial—the amount of cocaine, the scales, the pager and numerous separately wrapped baggies of the substance—all pointed to Dye's possession of the drug for the purpose of selling it to others. Based on our analysis of Dye's appellate issues and the evidence presented at trial, we cannot conclude that the real controversy has not been fully tried. We therefore affirm the judgment of conviction and the order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.

---

[7] At trial, evidence was obtained on cross-examination of a female friend of Dye's that he was not employed at the time of his arrest, and she was unaware of any other employment he may have had during the five years she had known him. When this information was coupled with the amount of money Dye was carrying at the time of his arrest, $850, it raises a reasonable question as to the source of the money. Dye did not present evidence that he had inherited more than $30,000 from the estate of his mother because he did not testify. However, we surmise that this fact could have been presented through the testimony of some other witness had Dye so desired.