STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael JOHNSON, Defendant-Appellant.†

Court of Appeals

*No. 00–0645–CR. Submitted on briefs November 7, 2000.—Decided April 19, 2001.*

**2001 WI App 105**

(Also reported in 628 N.W.2d 431.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David R. Karpe* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

166

general, and *Christopher G. Wren,* assistant attorney general.

Before Dykman, P.J., Deininger and Leineweber, JJ.[1]

¶ 1. DYKMAN, P.J. Michael Johnson appeals from a judgment convicting him of possession of cocaine and possession of cocaine with intent to deliver. He also appeals from an order denying his postconviction motion to set aside the jury's verdict and vacate the judgment. He argues that a conviction on both charges violated the double jeopardy clauses of the state and federal constitutions. He also argues that there was insufficient evidence to support the jury verdict. We conclude that the evidence supported the verdict and that Johnson is judicially estopped from making his postconviction double jeopardy arguments. We therefore affirm.

## I. Background

¶ 2. On June 13, 1997, police executed a search warrant for two neighboring apartments. Officer Bart O'Shea entered one of the apartments behind two other officers, one of whom set off a diversionary device commonly referred to as a "flash bang." The device emits a bright flash and a loud bang and is intended to stun the subjects of a residential search.

¶ 3. O'Shea found three people, including Johnson, in the bathroom of the apartment. O'Shea also found a clear plastic baggie in the toilet. Inside the baggie were two additional baggies, each containing ten rocks of cocaine base, or crack cocaine. O'Shea

---

[1] Circuit Judge Edward E. Leineweber is sitting by special assignment pursuant to the Judicial Exchange Program.

found another baggie on the floor between the toilet and the bathtub. That baggie also contained additional baggies with individual rocks of crack inside. The baggies from the toilet and the floor contained a total of twenty-five rocks of crack.

¶ 4. Detective John Halford searched Johnson's person and found an additional five rocks of separately packaged crack cocaine in Johnson's pants pocket. All of the cocaine was similar in appearance and packaging.

¶ 5. The State charged Johnson with two counts of possession of cocaine with intent to deliver in violation of WIS. STAT. § 961.41(1m)(cm)1 (1995–96).[2] One charge referred to the cocaine in Johnson's pocket, and the other charge referred to the cocaine in the bathroom. The state amended the information to charge Johnson as party to a crime on both counts pursuant to WIS. STAT. § 939.05.

¶ 6. The case went to trial, and the jury determined that Johnson was guilty of possession with intent to deliver, party to a crime, for the cocaine in the bathroom. As to the cocaine in Johnson's pocket, the jury determined that Johnson was guilty of the lesser-included offense of possession.

¶ 7. Johnson moved for postconviction relief, arguing, among other things, that conviction on both counts violated double jeopardy prohibitions. Rejecting Johnson's double jeopardy arguments, the trial court denied the motion. Johnson appeals.

---

[2] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted. Johnson's charges were also subject to a penalty enhancer under WIS. STAT. § 961.49.

## II. Analysis

### A. Judicial Estoppel

¶ 8. On appeal, Johnson repeats his argument that his two convictions violate both the state and federal constitutional prohibitions against double jeopardy. While the State responds to Johnson's double jeopardy arguments, it also asserts that we should apply judicial estoppel and decline to review Johnson's double jeopardy claim. We agree with the State that Johnson is judicially estopped from prevailing on his double jeopardy arguments.

¶ 9. The doctrine of judicial estoppel is not directed at the relationship between the parties, but is intended to protect the judiciary as an institution from the perversion of its machinery. *State v. Petty*, 201 Wis. 2d 337, 346, 548 N.W.2d 817 (1996). Judicial estoppel is an equitable doctrine intended to prevent a litigant from "playing fast and loose with the courts." *Id.* at 347. When an appellate court invokes judicial estoppel, a decision on the elements and considerations involved presents a question of law for our independent determination. *See id.*

¶ 10. Although judicial estoppel is not easily reduced to a pat formula, there are identifiable boundaries. *Petty*, 201 Wis. 2d at 348. First, the defendant's later position must be "clearly inconsistent" with the earlier position. *Id.* Second, the facts at issue should be the same in both cases. *Id.* Finally, the party to be estopped must have convinced the first court to adopt its position. *Id.* Thus, although we permit a party to argue inconsistent positions in the alternative, "once it has sold one to the court it cannot turn around and

repudiate it in order to have a second victory." *Id.* at 350 n.6. Instances in which a defendant in a criminal case reverses positions on appeal most often fit these parameters since the facts are the same and it is easier to discern whether the positions are clearly inconsistent. *Harrison v. LIRC,* 187 Wis. 2d 491, 497, 523 N.W.2d 138 (Ct. App. 1994).

¶ 11. At trial, Johnson's attorney argued during his opening statement:

> We have two charges here. We have two charges of possession with intent to deliver, and just so I can keep them separate in my mind, we have the first charge there is—I'm going to call that the pocket cocaine. Okay. If I can just focus on that for a moment. That is what the evidence is going to show, that there was pocket cocaine that Mike had when he was arrested, and Michael clearly will say, the testimony will show, heck, yeah, that was mine. You bet, that was mine. It was wrong, and I was smoking it, but it was—it was mine, no argument there.
>
> We hope the testimony will also show that he had no interest in selling it. It was mine for personal use, and that's where you'll see that testimony evolving today. Yup, it's mine, but I wasn't going to sell it. That's the first count.
>
> The second count is the bathroom cocaine. . . .
>
> Please, please, as we all tend to do as the day wears on, we tend to get even like actually lazy. We may end up trying to maybe blend the charges together. Please don't. Pocket cocaine, toilet cocaine, bathroom cocaine. Please keep them differently. Please keep them separate. As you hear the testimony come out, you will notice it's important that we keep the two separate.

¶ 12. Upon direct examination, Johnson testified as follows:

Q What else had you planned on doing that night, Mike?

A I had planned on getting high, myself.

Q In fact, did not you have—what did you have on your person that was found that night?

A I had five bags of cocaine in my pocket.

Q And that was cocaine you were going to ingest that evening?

A That's right.

Johnson explained that he was in the living room of the apartment when he heard a bang. He thought it was shooting, so he went down the hallway with his girlfriend, at which time a man he did not know "ran into my girlfriend and in turn we all fell in the bathroom." Johnson further explained that he fell between the tub and the toilet, and as he was trying to get up, a police officer came in pointing a gun at him. Johnson's attorney then asked: "It's—your testimony is you know nothing about the drugs in the bathroom?" Johnson responded: "No, I don't."

¶ 13. On cross-examination, Johnson repeated much of his testimony, noting that earlier that day, he had purchased the five rocks of cocaine in Chicago for personal use. He reiterated that he "knew nothing about the crack cocaine in the toilet, on the floor, nowhere but [w]hat was in my pocket."

¶ 14. At closing argument, Johnson's attorney argued:

I would submit that to Count 1, as we talked about many, many hours ago, the pocket cocaine, Michael

told you yeah, it was mine; yeah, I brought [sic] it down in Chicago, I brought it up here. You have to return a verdict of guilty of possession because that's what Mike did, and he told you that. Mike also told you that he wasn't trying to sell the cocaine in the pocket.

The second charge, and that's in the bathroom, as I asked Mike, who put the drugs there; I don't know. I don't know. We would ask that you return a verdict of not guilty to not only possession with intent to deliver, but to possession.

¶ 15. Johnson's position throughout trial was that he admitted possessing the cocaine in his pockets only for personal use, and that he disavowed any knowledge or relationship to the cocaine the police found in the bathroom. This position is clearly inconsistent with the arguments he makes on appeal in support of his double jeopardy claim. In his brief, Johnson argues that he was "obviously trying to get rid of all of his cocaine once he figured out the apartment was being raided, and he just did not succeed in getting it all out of his pocket." He also argues that:

> [I]t defies the imagination to suppose that while the police were barging into [the] apartment in the aftermath of the flash-bang explosion, their weapons out and pointing, that [he] thought he would have an opportunity to separate out a bit of cocaine to continue possessing while leaving some behind in the toilet.

¶ 16. Because the two proceedings we compare here are a trial and the appeal from it, there is no question that they involve the same facts and factual issues. The final question thus becomes whether it can be said that Johnson convinced the court, and in this

case the jury, of a position he now seeks to repudiate in order to secure a second victory.

¶ 17. *State v. McCready*, 2000 WI App 68, 234 Wis. 2d 110, 608 N.W.2d 762, *review denied*, 2000 WI 36, 234 Wis. 2d 179, 612 N.W.2d 734, illustrates that victory below need not mean that the defendant has gone free. It is enough that the defendant achieves what he or she sought in the first proceeding. In *McCready*, the defendant moved to terminate his probation. *Id.* at ¶ 2. The trial court granted the motion and sentenced the defendant to five years in prison. *Id.* On appeal, the defendant argued that the trial court did not have the authority to terminate his probation. *Id.* at ¶ 3. We rejected the defendant's argument on the merits, but began our decision by noting that his case "beg[ged] for application of judicial estoppel." *Id.* at ¶ 1.

¶ 18. In Johnson's case, it was the State's decision to proceed with two separate charges. However, Johnson could have moved to dismiss one of the charges as multiplicitous. Instead he chose to take advantage of the separate charges in an attempt to limit his total criminal exposure. He requested that the lesser-included offense of possession be submitted to the jury for the cocaine in his pocket.[3]

¶ 19. Johnson was victorious to the extent that he convinced the jury that he possessed the cocaine in his pocket without intent to deliver it. Unfortunately for Johnson and his trial strategy, it appears that the jury did not also believe that he knew nothing about

---

[3] The trial transcript shows that the parties eventually agreed to submission of the lesser-included offense, but Johnson's Request for Jury Instructions shows that he asked for the lesser-included offense instruction. The State's Request for Jury Instructions expressly indicated that it did not want an instruction on the lesser-included offense.

the cocaine in the bathroom. But because the jury was partially convinced of Johnson's position on the facts, he cannot now enjoy a "second victory" by reversing that position on appeal in order to assert a double jeopardy violation.

¶ 20. Johnson contends that the policy behind judicial estoppel does not apply to his case because he raised his double jeopardy claim with the trial court in a postconviction motion. Therefore, he argues, the trial court had an opportunity to rule on the merits of the double jeopardy issue, and "there was no procedural advantage to the judicial system in having it raised before conviction."

■

¶ 21. Johnson misconstrues the purpose of judicial estoppel. It is not a doctrine based primarily on judicial economy, nor is it based on the trial court's superior ability to make certain types of determinations. Instead, judicial estoppel focuses on protecting the judiciary from the "perversion of judicial machinery." *Petty*, 201 Wis. 2d at 346. Johnson did not make his double jeopardy argument until after he was convicted. At that point, the proceedings below, and his resulting partial victory, were complete for purposes of judicial estoppel. His opportunity to benefit further by arguing the reverse of his position at trial was the same whether he made that argument to the trial court or this court. In sum, we conclude that Johnson is judicially estopped from arguing that the two convictions violated double jeopardy prohibitions.

## B. Sufficiency of the Evidence

¶ 22. Johnson also argues that the evidence was insufficient to support the jury's finding that he had

the intent to deliver the cocaine the police found in the bathroom. We disagree.

¶ 23. We will not reverse a conviction for insufficiency of the evidence "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶ 24. Detective Halford testified that he had arrested over one hundred people for trafficking in crack cocaine and that he was familiar with the customs and habits of those who engage in cocaine trafficking. Halford testified that the cocaine found in the bathroom was packaged in a way that was consistent with crack dealing. He also explained that possession of twenty rocks of crack was consistent with intent to deliver and that possession of even five rocks could indicate more than personal use. Finally, Halford testified that he recovered a pager from Johnson, and that possession of a pager is consistent with drug trafficking. We have previously held that a pager and numerous separately wrapped baggies of crack both constitute evidence that supports intent to sell. *See State v. Dye*, 215 Wis. 2d 281, 294, 572 N.W.2d 524 (Ct. App. 1997).

¶ 25. Johnson argues that the jury necessarily rejected Halford's testimony when it determined that Johnson was guilty only of possession for the five rocks of crack in his pocket. While the jury may have rejected Halford's testimony that possession of five rocks indicates trafficking, it does not follow that the jury

necessarily rejected the rest of Halford's testimony. This testimony is evidence upon which the jury reasonably could have based a determination that Johnson intended to sell the cocaine found in the bathroom.

*By the Court.*—Judgment and order affirmed.