COURT OF APPEALS
DECISION
DATED AND FILED

December 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2021AP1680-CR**
**2021AP1681-CR**
STATE OF WISCONSIN

Cir. Ct. Nos.  2017CF1068
2017CF2334

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JUSTIN T. KNUTSON,

DEFENDANT-APPELLANT.

APPEALS from a judgment and an order of the circuit court for Dane County: WILLIAM E. HANRAHAN and MARIO D. WHITE, Judges. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Justin Knutson appeals a judgment of conviction and an order that denied his motion for resentencing.[1]  Knutson argues that he is entitled to resentencing because:  (1) the sentencing court relied on inaccurate information at sentencing; and (2) his trial counsel was ineffective by providing the inaccurate information to the court during the sentencing hearing.  For the reasons set forth in this opinion, we reject those arguments.  We affirm.

¶2     On June 22, 2018, Knutson pled guilty to operating while intoxicated (OWI) as a fifth offense, and misdemeanor offenses of disorderly conduct while using a dangerous weapon and intimidating a victim.   The disorderly conduct charge was based on Knutson's actions, while armed with a gun and drinking alcohol, at his ex-girlfriend's house.   The parties jointly recommended that the sentencing court withhold adjudication for a week and allow Knutson the opportunity to begin an in-patient alcohol treatment program. The prosecutor stated that, if Knutson showed up for the rescheduled sentencing hearing, the State would recommend eighteen months of initial confinement and eighteen months of extended supervision on the OWI conviction, and a maximum of four months of jail time or two years of probation on the misdemeanor convictions.  If Knutson failed to appear at the hearing, however, the State would be free to argue.

¶3     The sentencing court followed the parties' recommendation and withheld adjudication.   The court found that Knutson had "stepped up" and "admitted responsibility for these crimes."   The court also addressed Knutson as

_____

[1] The Honorable William E. Hanrahan (the sentencing court) imposed Knutson's sentence.   The Honorable Mario D. White (the postconviction court) denied Knutson's postconviction motion.

follows: "This is a remarkable opportunity to avail yourself [of] the treatment program that you're getting into at the same time turning around the kind of disastrous direction that you've been heading here and prove to the court and yourself that you're worthy of trust that's been placed in you."

¶4      Knutson failed to appear for the sentencing hearing on August 3, 2018.  He was returned to court on warrants on August 29, 2018.  Defense counsel informed the court that Knutson had been in a serious motorcycle accident in Champaign, Illinois, at the end of July 2018.

¶5      Knutson returned to the circuit court for sentencing on October 8, 2018.  The parties jointly recommended twelve months in jail; a $600 fine; two years of driver's license revocation and ignition interlock; and two years of probation.  Defense counsel argued in support of the joint recommendation that Knutson's discovery that he "was expecting another child" had "really given him pause"; that Knutson loved his children and wanted to do his best by them; and that he intended to move forward with his family.

¶6      The sentencing court asked defense counsel to explain the facts behind the disorderly conduct while armed charge.  Defense counsel stated that the "whole incident arises in the context of a party that had been going on some hours with a lot of drinking of alcohol--hard alcohol is my recollection--and the taking of a number of different drugs."  Counsel also made the following statements:  "I know where the house is.  It's … a place where a lot of people go to have parties and things like that"; "When you go to this house, there are guns in the house ….  It is my understanding that there are guns in the house from people I've spoken with who … have been in the house and have been to the parties and things, and there are a lot of drugs, and then there's other things for sale"; and that Knutson

3

"went off his medicine, got involved with a really bad group of folks, … was with them doing drugs and drinking and things like that."

¶7 Knutson exercised his right of allocution, apologizing for his conduct and asking the sentencing court to give him a chance to accomplish his goals. The court reminded Knutson that he had already been given a chance, and asked him why he did not appear for sentencing. Knutson stated that he had travelled to Illinois to be with his son during an operation and that he had gotten stranded there.

¶8 In explaining its rationale for the sentence imposed, the sentencing court said to Knutson: "On one hand, I'm hearing that you've decided you want to be a good family man, but there's absolutely no evidence of that whatsoever here. I've got you out at drug houses where people have guns and drugs and alcohol …." The court said that the crimes were "outrageous" and "egregious," and that Knutson was "bumbling from one potential disaster into the next." It found that the joint sentencing motion was not "even close to hitting the mark." The court declined to follow the joint recommendation, and instead imposed two and a half years of initial confinement and three years of extended supervision.

¶9 Knutson moved for resentencing. He argued that his trial counsel's description of the house where the disorderly conduct occurred was inaccurate, and that the sentencing court relied on that inaccurate information when it made the statement that Knutson was not trying to be "a good family man" but rather was "out at drug houses where people have guns and drugs and alcohol." He also argued that his trial counsel was ineffective by providing that inaccurate information to the court. The State took no position on the motion.

4

¶10    The motion for resentencing was assigned to the postconviction court, which held an evidentiary hearing for Knutson to testify in support of his claim.  Knutson testified that his trial counsel's description of the house at sentencing was inaccurate.  The postconviction court assumed, without deciding, that the information was inaccurate and that the sentencing court actually relied on that information at sentencing.[2]  The court determined that, considering the sentencing court's sentencing remarks as a whole, the sentence would not have been different had defense counsel not provided the inaccurate information at sentencing.  On that basis, the postconviction court determined that the reliance on the inaccurate information was harmless.  For the same reason, the postconviction court determined that Knutson's ineffective assistance of counsel claim failed on the prejudice prong, because Knutson could not meet his burden to show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."

¶11    "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1.  Whether the defendant was denied that right is a constitutional question that we review de novo. *Id.*  "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." *Id.*, ¶26 (quoted source omitted).  If the defendant establishes actual reliance on inaccurate information, the burden shifts to the State to prove that the error was harmless. *Id.*

---

[2] We do the same, and assume for purposes of this opinion that the information was inaccurate and that the sentencing court actually relied on that information at sentencing.

"The State can meet its burden to prove harmless error by demonstrating that the sentencing court would have imposed the same sentence absent the error." *See State v. Travis*, 2013 WI 38, ¶73, 347 Wis. 2d 142, 832 N.W.2d 491.

¶12    Knutson argues here that the sentencing court relied on inaccurate information at sentencing and that the error was not harmless. He argues that the State has not shown that the sentencing court would have imposed the same sentence absent the error. He contrasts the court's statements at the plea hearing, when the court accepted the parties' joint recommendation to withhold adjudication and allow Knutson an opportunity to begin treatment, with the court's statements at sentencing, when the court characterized Knutson's conduct as "outrageous" and "egregious" and said that the joint recommendation was not "even close to hitting the mark." Knutson argues that the only new information before the court that could have caused the court's change in perspective was defense counsel's description of the house where Knutson committed the disorderly conduct as a "drug house." He asserts that the difference in the court's statements at the plea hearing versus the sentencing hearing indicates that the court would not have imposed the same sentence absent his counsel's inaccurate statements at the sentencing hearing.

¶13    Knutson also argues that his trial counsel was ineffective at sentencing by providing the inaccurate description of the house to the court. He argues that he was prejudiced by his counsel's deficient performance because there is a reasonable probability that the circuit court would have imposed a lesser sentence absent the inaccurate information. *See Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984) (claim of ineffective assistance of counsel must show that counsel's performance was deficient and prejudiced the defendant, that is, that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

¶14 The State responds that if the sentencing court relied on the inaccurate information, the error was harmless.[3] It contends that the sentencing transcript shows that the court's reference to the allegedly inaccurate information was in the context of discussing the seriousness of the offenses, and that the seriousness of the offenses remains true regardless of the accuracy of defense counsel's description of the house. It also contends that the allegedly inaccurate description of the house was not integral to the court's sentence. Rather, the State asserts, the court focused on the seriousness of the offenses, Knutson's character and rehabilitation and treatment needs, and the need to protect the public. The State also contends that Knutson is wrong that there was no significant difference in the circumstances between the plea and sentencing hearings; rather, the State points out, at the time of sentencing, Knutson had failed to comply with the opportunity to begin treatment between his plea and sentencing.

---

[3] Knutson argues in his reply brief that the State is judicially estopped from arguing on appeal that Knutson's sentence should be upheld. He points out that, before the postconviction court, the State took no position on whether Knutson was entitled to resentencing, and argues that the State may not take a different position on appeal. We disagree. For judicial estoppel to apply, "the party to be estopped must have convinced the first court to adopt its position," and must take a "clearly inconsistent" position on appeal. *See State v. Johnson*, 2001 WI App 105, ¶10, 244 Wis. 2d 164, 628 N.W.2d 431. Knutson does not explain in what way the State convinced the court to adopt its position, when it took no position on the motion before the postconviction court. To the extent Knutson is arguing that the State convinced the postconviction court to deny the motion by taking no position, the State's position on appeal that the court properly denied the motion is not clearly inconsistent with that position. Moreover, the State, as the respondent, may raise any argument on appeal that would permit us to affirm the circuit court's ruling, even if the argument was not raised in the circuit court. *See State v. Kiekhefer*, 212 Wis. 2d 460, 475, 569 N.W.2d 316 (Ct. App. 1997).

¶15    The State further argues that Knutson was not prejudiced by any deficient performance by his trial counsel. It reiterates its argument that the result of the sentencing hearing would have been the same absent trial counsel's inaccurate statements at sentencing.

¶16    When we consider the sentencing court's remarks as a whole, we are satisfied that the court would have imposed the same sentence regardless of the inaccurate information presented to the court regarding the house where the disorderly conduct occurred. We therefore conclude that any error by the court in relying on that inaccurate information at sentencing was harmless.

¶17    In our review of the sentencing transcript, it is clear that defense counsel's description of the house where the disorderly conduct occurred was not the sentencing court's primary focus. Rather, the court explained that the basis of its sentence was Knutson's character and rehabilitative needs, the seriousness of the offenses, and the need to protect the community. The court began its sentencing comments by recounting Knutson's bond violations, stating: "Every time you're out on bond, you violate conditions of your bond, you commit new crimes, you don't show up for court, and you've got excuses at every single turn." The court stated that there was "no question" Knutson had treatment needs and "criminal thinking on top of it," stating: "I don't know how you continue to put yourself in these situations and continue to thumb your nose at reasonable restrictions that are placed upon your freedom of movement even after I gave you a big break the last time you were in court."

¶18    The sentencing court also considered the seriousness of the offenses. The court found that the crimes were "outrageous" and "egregious." The court recounted the facts of the cases: that Knutson had been "drunk with a gun and

8

pointing it at people"; "and then the intimidation charge"; "and then five counts are dismissed, including false imprisonment and bail jumping, several bail-jumpings, and a theft"; "[t]hen … this OWI that you've got weed in your possession, a … second-plus offense, and the resisting/obstructing all involved here." The court described Knutson's conduct as "a horrible crime spree."

¶19 Finally, the sentencing court explained that the sentence it imposed was necessary to allow Knutson to have an opportunity for "meaningful treatment" and to protect the public.

¶20 Our review of the sentencing transcript reveals that the sentencing court's statements remain accurate absent any reliance on the inaccurate description of the house where the disorderly conduct offense occurred, and that the court would have imposed the same sentence without its reliance on that inaccurate description. *See State v. Coffee*, 2020 WI 1, ¶¶39-51, 89 Wis. 2d 627, 937 N.W.2d 579. The court referenced defense counsel's description of the house in the context of: its comments as to Knutson's failures to comply with bond; the seriousness of the offenses; and the court's understanding that, contrary to the defense's sentencing arguments, there was "no evidence" that Knutson made sincere attempts to be a "good family man." Absent the inaccurate description of the house, the logic of the court's sentencing comments remains exactly the same. *See id.*, ¶¶42-43. Regardless of defense counsel's description of the house, the facts before the court were that Knutson had repeatedly failed to comply with bond; that he had engaged in dangerous behavior involving drugs, alcohol, and weapons; and that his actions did not support a claim about attempting to be a "good family man."

¶21    We are not persuaded by Knutson's argument that the only difference between the plea hearing and the sentencing hearing was defense counsel's description of the house, even putting aside the simple fact that a circuit court is generally free to look at all relevant facts at the time of a sentencing hearing with new or different perspective from the court's perspective at the time of a plea. Rather, the sentencing court explained a significant change that had occurred between the plea hearing and the sentencing hearing: Knutson had failed to comply with the opportunity to begin treatment and to return to court for sentencing, an opportunity that was an explicit focus of the plea hearing. The court explained why Knutson's repeated failure to comply with reasonable restrictions imposed by the court supported the court's decision to disregard the joint recommendation and impose a harsher sentence. We therefore "conclude beyond a reasonable doubt that the sentencing court would have imposed the same sentence absent the error." *See id.*, ¶51 (quoted source omitted).

¶22    Because we conclude that any error by the sentencing court in relying on the inaccurate description of the house was harmless, we also conclude that counsel's deficient performance in providing the inaccurate description did not prejudice Knutson. *See* ***State v. Dyess***, 124 Wis. 2d 525, 544, 370 N.W.2d 222, (1985) (harmless error test same as test for lack of prejudice under claim of ineffective assistance of counsel). We affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

10