COURT OF APPEALS
DECISION
DATED AND FILED

March 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1017-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2019CF824

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LOGAN D. WOLFORD-PIERCE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County:  PETER L. GRIMM, Judge.  *Affirmed*.

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Logan D. Wolford-Pierce appeals a judgment of conviction entered upon his no-contest pleas to felony bail jumping and, most relevant to his arguments on appeal, to making a threat to a law enforcement officer. He also appeals from an order denying his motion for postconviction relief. His postconviction motion raised various arguments relating to the validity of his plea to the threat count, nearly all of which he raised in an earlier presentence motion for plea withdrawal. Wolford-Pierce withdrew that motion following an evidentiary hearing and expressed his desire to proceed to sentencing.

¶2 We agree with the State that Wolford-Pierce is judicially estopped from resurrecting the arguments from his earlier plea withdrawal motion after disavowing them and urging the circuit court to proceed to sentencing. As for the one non-waived issue relating to venue in Fond du Lac County, we reject his arguments. Consequently, we affirm.

## BACKGROUND

¶3 Wolford-Pierce was from Fond du Lac and had spent time in a juvenile detention center in La Crosse. In September 2019, his therapist in La Crosse raised concerns about a drawing that was found in Wolford-Pierce's room depicting individuals' names and a rhyme about stabbing them.[1] One of the names was a corrections officer in Fond du Lac that knew Wolford-Pierce from when he was incarcerated in the Fond du Lac jail. She had written up Wolford-Pierce on numerous conduct reports during his time there.

---

[1] Wolford-Pierce wrote: "Grab a knife, grab a knife, it's time to have some fun, take the knife, take the knife, stick it in someone."

¶4 At times in 2019, Wolford-Pierce was committed at Mendota Mental Health Institute in Madison. Police were investigating the threats throughout 2019, and on December 4, a City of Fond du Lac detective and an officer went to speak with Wolford-Pierce at Mendota. Wolford-Pierce, whose eighteenth birthday was a few days away, told them he had drawn the picture when he was fifteen and had forgotten the "hit list" until it had been shown to him a few weeks prior. He stated that "everything had changed since" he made the drawing and said the people on the list did not need to be prepared for anything. He added, however, that he "wanted them to know they were on the hit list and if they were scared that they should be prepared to make themselves feel better."

¶5 On December 14, 2019, a Fond du Lac County sheriff's deputy was dispatched to conduct a welfare check on an individual walking close to the roadway on U.S. Highway 151. There, the deputy found Wolford-Pierce, who was holding a black "Halloween[-]type" mask and wearing a backpack. Wolford-Pierce consented to a search of the backpack, which contained an eight-inch butcher knife. Wolford-Pierce was taken into custody.

¶6 The deputy met with Wolford-Pierce at the Fond du Lac County jail the next day. Wolford-Pierce stated he had been released from Mendota on December 7. He gave various descriptions of where he had spent the preceding week but claimed he had stayed primarily with family. In response to a question about hurting himself or others, Wolford-Pierce brought up that in 2016 he had made a list of people he wanted to kill. He claimed not to have had any further thoughts of harming others. He also claimed he took the knife from his brother's house for protection in case something happened to him while he was walking. He stated he did not know the area well and had no specific destination in mind before he was stopped by the deputy.

¶7     Wolford-Pierce was charged in an eight-count complaint, including with felony bail jumping and making a threat to a law enforcement officer (specifically, the Fond du Lac corrections officer). Approximately one week before the scheduled trial date, the parties informed the circuit court that they had resolved the case. Wolford-Pierce would plead to the two crimes of conviction, with the remaining counts dismissed and read in.[2] On the threat-to-law-enforcement count, the State agreed to recommend two years' initial confinement and two years' extended supervision. On the felony bail-jumping count, the State agreed to recommend a consecutive four-year term of probation, with an imposed-and-stayed sentence consisting of two years' initial confinement and two years' extended supervision.

¶8     At the plea hearing, the circuit court engaged Wolford-Pierce in a thorough colloquy as required under WIS. STAT. § 971.08(1) (2021-22),[3] including by reviewing the elements of the two offenses to which he was pleading no contest. As the court inquired into the factual basis for the pleas, Wolford-Pierce asserted that the 2019 date for the threat-to-law-enforcement count was incorrect because he had made the drawing years earlier. The prosecutor replied that the drawing had only recently come to light and the charging date was appropriate. Defense counsel agreed, remarking that it would be "futile to argue that it didn't fall within the time frame, especially considering the agreement that we have

---

[2] One of the counts was dismissed outright on the prosecutor's motion based on his belief that it could not be validly charged.

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

made with the district attorney to resolve this matter, which I believe is favorable to my client, and so at this point I would have no objection to the factual basis."

¶9 The circuit court found a sufficient factual basis for the pleas. After discussing penalties, constitutional rights and other matters, it found that Wolford-Pierce had entered knowing, intelligent and voluntary no-contest pleas to the two crimes of conviction. The court ordered a presentence investigation report (PSI) and set the matter for sentencing.

¶10 About one month later, Wolford-Pierce wrote several pro se letters to the circuit court. Generally, he argued certain charges were inappropriate, the police had performed unconstitutional searches, and his attorney had abandoned him. In particular, he claimed his appointed attorney had not given him discovery or explained the consequences of his plea, and he expressed a desire not to plead without those things.

¶11 Shortly before a scheduled hearing, Wolford-Pierce's appointed attorney filed a letter advising that he would not be in attendance due to a medical issue and might need to withdraw from the representation. At the hearing, the circuit court asked Wolford-Pierce about whether he wanted his attorney removed from the case and a new lawyer appointed. Wolford-Pierce responded that he wanted to keep his attorney, adding that his pro se letters were precipitated by some "false information" he had read. Wolford-Pierce stated he wanted to proceed with the sentencing hearing scheduled for August 27, 2020. When his appointed attorney did not appear at the scheduled sentencing hearing,

Wolford-Pierce reluctantly elected to have new counsel appointed, and the matter was adjourned.[4]

¶12 Successor counsel was appointed and filed a motion for plea withdrawal. The motion alleged that Wolford-Pierce had not been provided with necessary discovery or adequately advised of the nature of the threat charge; his plea to the threat count was not knowing, intelligent and voluntary; and there was a potential innocence claim that turned on whether "the so-called 'hit list' … was a true threat and whether it was ever communicated by the defendant."

¶13 The court set the matter for a motion hearing, at which Wolford-Pierce testified. The court adjourned the hearing to allow the parties to file legal memoranda and decide whether it was necessary to take the testimony of Wolford-Pierce's prior counsel.

¶14 About one week after the hearing, Wolford-Pierce wrote a pro se letter advising the circuit court that he felt he was "wasting my time and yours doing the testifying." Wolford-Pierce further wrote that he did not wish to vacate his plea and wanted to proceed to sentencing under the existing plea agreement. The court set the matter for sentencing and asked defense counsel to confer with Wolford-Pierce regarding the case status. Defense counsel confirmed to the court that Wolford-Pierce wanted to proceed with sentencing.

¶15 At the start of the sentencing hearing, the circuit court inquired of Wolford-Pierce about his desire to withdraw his motion to vacate his plea.

---

[4] Wolford-Pierce stated he wanted the matter resolved that day if possible, but relented when advised that there would be a delay anyway to allow him to review the PSI.

Wolford-Pierce confirmed that it was his desire to withdraw his motion, he was doing so freely and voluntarily, and he had sufficient time to confer with counsel. The court advised Wolford-Pierce that it was not a waste of time to raise concerns that he had, and it reassured him that the court would take as much time as necessary to address those matters. Wolford-Pierce stated he understood and wished to proceed to sentencing.

¶16    After the attorneys held a sidebar and Wolford-Pierce consulted with his attorney, the circuit court reviewed the terms of the plea agreement. Wolford-Pierce confirmed that he understood the terms. The court then established that Wolford-Pierce was waiving his right to have his concerns regarding his plea adjudicated:

> THE COURT: And just to now readdress Logan, so do you understand that by proceeding to sentencing today and technically dropping or withdrawing your motion to withdraw your pleas, that means you can't raise that issue later for withdrawing your plea, if I understand the law correctly. Do you understand that consequence, Logan, of your decision today?
>
> MR. WOLFORD-PIERCE: Yes.
>
> THE COURT: … [W]hich means you can't later, a year from now, say, well, wait a minute, I want to change my mind. That would not be a legal basis to file that motion again. Do you understand that?
>
> MR. WOLFORD-PIERCE: Yes.
>
> THE COURT: There would have to be something new or different than was raised in this motion here to get back to Court to withdraw your plea. Do you understand that?
>
> MR. WOLFORD-PIERCE: Yes.

After hearing argument and making detailed sentencing remarks, the court imposed the maximum penalty for the threat-to-law-enforcement offense, three

years' initial confinement and three years' extended supervision. The court imposed a consecutive four-year probation period for the bail-jumping offense, with an imposed-and-stayed six-year sentence consisting of three years' each initial confinement and extended supervision.

¶17 Wolford-Pierce obtained postconviction counsel and filed a second plea withdrawal motion. The motion raised mostly the same issues as the motion that Wolford-Pierce had withdrawn: that his plea was not knowing, intelligent and voluntary because he was not aware of the nature or factual basis for the threat charge; that the circuit court failed to conduct a sufficient colloquy under WIS. STAT. § 971.08(1) to ensure that Wolford-Pierce had committed the crime because the drawing did not constitute a "true threat" or communication; and that his plea was not knowing, intelligent and voluntary as a result of the ineffective assistance of his initial attorney. Additionally, the motion argued the Fond du Lac County Circuit Court lacked jurisdiction over the threat charge because the drawing had been created in La Crosse.

¶18 The circuit court denied the postconviction motion without an evidentiary hearing. It held that Wolford-Pierce had validly waived his right to seek plea withdrawal on the bases advanced in his since-withdrawn motion. Specifically, the court noted that Wolford-Pierce had not only demanded to proceed to sentencing, he had ratified the terms of the plea agreement when doing so. The court also concluded the threat offense was properly venued in Fond du Lac County. Accordingly, the court found no manifest injustice that would warrant plea withdrawal. Wolford-Pierce now appeals.

**DISCUSSION**

¶19 We agree with the State that Wolford-Pierce is judicially estopped from raising the same claims that he advanced in his initial motion for plea withdrawal, which were primarily directed to the threat count. After holding an evidentiary hearing on that motion, the circuit court advised Wolford-Pierce that he would not be able to resurrect those claims at a later date if he elected to withdraw the motion and proceeded to sentencing. Wolford-Pierce nonetheless decided that he wanted his case to end. This choice was confirmed by counsel and by Wolford-Pierce himself during a thorough colloquy.

¶20 Judicial estoppel is an equitable doctrine intended to prevent a litigant from playing "fast and loose with the courts." *State v. Johnson*, 2001 WI App 105, ¶9, 244 Wis. 2d 164, 628 N.W.2d 431. We independently determine whether the elements of judicial estopped have been established and whether estoppel is warranted. *Id.*

¶21 There are three essential elements required to judicially estop a litigant from raising an issue. First, the position must be "clearly inconsistent" with an earlier position. *Id.*, ¶10. Second, the facts must be the same. *Id.* Third, the party to be estopped must have convinced the court to adopt its earlier position. *Id.* Inconsistent positions may be argued in the alternative, but once a party has a sold a court on one position, it may not repudiate that position to obtain a second victory. *Id.*

¶22 These elements are satisfied here and judicial estoppel is appropriate. First, Wolford-Pierce's positions are inconsistent because he affirmatively represented to the circuit court that he wished to forego a determination on his plea withdrawal motion and proceed to sentencing. Though

Wolford-Pierce argues that he is not asking for "appellate relief from a trial strategy gone awry," as explained below, we perceive to the contrary.

¶23 Our conclusion on the first element necessarily dovetails with our conclusions on the second and third elements. Here, Wolford-Pierce obviously had concerns about the validity of his plea on the threat count, relating to the adequacy of both the plea colloquy and of his attorney's representation. Wolford-Pierce raised these concerns to the circuit court and proceeded to an evidentiary hearing on them. His success on these claims would have returned his case to a pre-plea posture. The plea agreement would have become a nullity, and the court would not have proceeded to sentencing absent his withdrawal of his motion.

¶24 Thus, having an awareness of both the nature of his legal challenges to the plea and the facts supporting those challenges, Wolford-Pierce nonetheless decided that he wanted to proceed to sentencing. In doing so, Wolford-Pierce both ratified the plea agreement and endorsed the validity of his plea. The former he did so explicitly on the record; the latter, implicitly, because the circuit court could not have sentenced him on pleas that were contrary to law. Unless, that is, his waiver was strategic, intended to ascertain what sentence he would be given before he decided whether he wanted to seek plea withdrawal.

¶25 For those reasons, we conclude the three elements of judicial estopped have been met. Wolford-Pierce has taken inconsistent positions about the validity of his plea, first claiming it was contrary to law and then implying that there was nothing problematic about it after all. The relevant facts have not changed, insofar as the validity of his plea is concerned; the only intervening circumstance is that the circuit court sentenced him for the crime. And

Wolford-Pierce was successful in persuading the court to sentence him based on his plea—a plea that he now contends was invalid for largely the same reasons as he raised earlier. Playing "fast and loose" with the courts appears to us an apt description of what Wolford-Pierce is attempting to do. *See* ***State v. Petty***, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996).

¶26 The only "new" argument in Wolford-Pierce's renewed plea withdrawal motion appears to relate to his claim on appeal that the threats charge was improperly venued in Fond du Lac County. Venue is a procedural matter regarding the place of trial, and Wolford-Pierce has not established that a lack of venue constitutes a manifest injustice warranting plea withdrawal. *See* ***State v. Lippold***, 2008 WI App 130, ¶¶9-10, 313 Wis. 2d 699, 757 N.W.2d 825.

¶27 That aside, the parties concur that venue is proper in any county where at least one element of the offense occurred. *See* ***State v. Swinson***, 2003 WI App 45, ¶21, 261 Wis. 2d 633, 660 N.W.2d 12. Here, among other things the State was required to prove that Wolford-Pierce threatened a person whom he knew was a law enforcement officer in response to an action taken in the law enforcement officer's official capacity. *See* WIS JI—CRIMINAL 1240D (Jan. 2024). According to the criminal complaint, Wolford-Pierce knew the victim, who was a correctional officer, from his incarceration at the Fond du Lac County jail. The victim had written up Wolford-Pierce on numerous conduct reports. We have no trouble concluding at least one element of the offense occurred in Fond du Lac County.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11